IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JULIE A. SANDERS,                                   Case No. 3:12-cv-01059-HZ

               Plaintiff,                        OPINION & ORDER

     v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

               Defendant.

KAREN STOLZBERG
11830 SW Kerr Parkway, #315
Lake Oswego, Oregon 97035

       Attorney for plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

1 – OPINION & ORDER

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for defendant


HERNANDEZ, District Judge:

      Plaintiff Julie A. Sanders brings this action for judicial review of the Commissioner's decision denying her application for Social Security Disability Insurance ("SSDI") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

      Ms. Sanders was born on March 8, 1975 and was 31 years old on the alleged disability onset date. Tr. 34. She is a high school graduate and attended two years of college. Tr. 208. Her past work includes employment at a call center and as a sales associate. Tr. 86, 226. Plaintiff last worked in December 2006. Tr. 204.

      Ms. Sanders protectively filed an application for SSI in August 2009, alleging disability as of December 2006 due to bipolar disorder, fibromyalgia, and disc disease. Tr. 176, 203-04. After the application was denied initially and upon reconsideration, Ms. Sanders requested a hearing before an administrative law judge ("ALJ"). Tr. 125, 131-32. On August 17, 2011, a hearing was held before ALJ Riley J. Atkins, at which Ms. Sanders testified and was represented by counsel; vocational expert ("VE") Amberly Ruck also testified. On August 25, 2011, the ALJ issued a decision finding Ms. Sanders not disabled within the meaning of the Act. Tr. 16-35.

After the Appeals Council denied review of the ALJ's decision, Ms. Sanders filed a complaint in this Court. Tr. 1-3.

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. Id.; Yuckert, 482 U.S. at 146 n.5. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the Commissioner determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

At step three, the Commissioner determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is presumptively disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." If the claimant can perform such work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Yuckert, 482 U.S. at 141. At step five, the burden shifts

3 - OPINION & ORDER

to the Commissioner to show that the claimant can perform other work existing in the national economy; if the Commissioner cannot meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 416.920(f); Tackett, 180 F.3d at 1099. Conversely, if the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that Ms. Sanders had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ determined that Ms. Sanders had the following severe impairments: bipolar disorder, posttraumatic stress disorder ("PTSD"), borderline personality traits, a history of substance abuse, left shoulder tendonitis, cervical degenerative disease, asthma, fibromyalgia, and a history of obesity. Id. At step three, the ALJ found that Ms. Sanders' impairments, either singly or in combination, did not meet listings 12.04 or 12.09. Tr. 22.

At step four, the ALJ found that Ms. Sanders had the residual functional capacity ("RFC") to perform a limited range of light work:

> [S]he can lift and/or carry up to 20 pounds occasionally and up to ten pounds frequently; she can stand and/or walk with normal breaks a total of about six hours in an eight-hour workday . . . [s]he can sit with normal breaks approximately about six hours in an eight-hour workday . . . [s]he should not engage in an climbing other than stair and ramps. She is limited to no more than occasional overhead reaching with the non-dominant left arm . . . [s]he should avoid concentrated exposure to environmental irritants for breathing disorers . . . [s]he should not be required to engage in public contact . . . [s]he can engage in brief, routine social interaction with others, but would work best alone."

Tr. 23-24.

At step four, the ALJ found that Ms. Sanders could no longer perform her past relevant work. Tr. 33. At step five, the ALJ found that Ms. Sanders' impairments did not fully preclude

4 - OPINION & ORDER

her from working; considering her age, education, work experience, and RFC, jobs existed in significant numbers in the national and local economy that Ms. Sanders could perform, such as final assembler or a sales slip sorter. Tr. 34. The ALJ therefore concluded that Ms. Sanders was not disabled under the Act from her alleged onset date through the date of the decision. Tr. 35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh the evidence that supports and detracts from the Commissioner's conclusions. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner. Id. (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits. Bray, 554 F.3d at 1225–26 (citation omitted).

## DISCUSSION

Ms. Sanders asserts that the ALJ wrongfully denied her claim for benefits by committing the following errors of law: (1) failing to find that her pain disorder was severe at step two; (2) failing to give her  testimony sufficient weight; (3) failing to give sufficient weight to lay witness testimony; (4) failing to give sufficient weight to certain medical opinions; and therefore (5)

5 - OPINION & ORDER

failing to adequately account for all of her limitations in formulating the RFC, which led to erroneous findings by the VE.

I.      **Step Two Pain Disorder Assessment**

Ms. Sanders contends that the ALJ committed reversible error by failing to find her pain disorder was severe at step two of the sequential analysis. The step two inquiry is the de minimis screening device used to dispose of groundless claims. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At step two, a plaintiff must present evidence of an impairment or impairments which are so severe that it "significantly limits [a plaintiff's] physical and mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely that they would be found disabled even if their age, education, and experience were not taken into account." Yuckert, 482 U.S. at 153. Where the plaintiff meets the de minimis threshold, the ALJ continues with the sequential analysis, considering the effect of all of the plaintiff's impairments, whether severe or non-severe. Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 at *5. Therefore, reversible error occurs only when a severe impairment excluded at step two caused additional functional limitations not accounted for in the RFC assessment. Lewis v. Astrue, 498 F. 3d 909, 911 (9th Cir. 2007).

In this case, step two of the sequential analysis was resolved in Ms. Sanders' favor, as the ALJ continued to subsequent steps; thus, any error in neglecting to mention plaintiff's alleged pain disorder was harmless so long as all of her impairments were considered in the RFC. Id. As discussed below, the ALJ properly accounted for all of plaintiff's impairments which were supported by medical evidence in formulating the RFC. Further, Ms. Sanders does not identify

any limitations which she believes are caused by her pain disorder over and above those discussed in the RFC. Therefore, any error at step two was harmless.

## II. Plaintiff's Credibility

Ms. Sanders argues that the ALJ erroneously discredited her testimony which led to an inaccurate RFC evaluation. Generally, "the extent to which an individual's statements about [pain] symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." SSR 96-7p, available at 1996 WL 374186 at *4. Absent evidence of malingering, an ALJ must present clear and convincing reasons for rejecting a plaintiff's testimony. Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ presented several reasons for discounting Ms. Sanders' testimony including (1) exaggeration of physical and mental health symptoms; (2) drug-seeking behavior; (3) activities of daily living ("ADL's") which contradicted endorsed limitation level; (4) past work activity inconsistencies with endorsed limitation level; and (5) lack of candor about alcohol use. Ms. Sanders disputes each of the rationales offered by the ALJ.

The ALJ's decision included several examples of what he found to be plaintiff's symptom exaggeration. For example, the ALJ found that emergency room ("ER") physicians noted that Ms. Sanders exhibited pain behavior only when observed. Tr. 32. When Ms. Sanders presented at an ER complaining of kidney stones in 2009, the attending physician, Dr. Erenio Aledo, M.D., entered the room and found her completely "non-distressed and browsing a magazine." Tr. 667. The same doctor noted that Ms. Sanders had presented at ER's previously with complaints of kidney stones, but as was the case with his interaction with her, no kidney stones were ever found. Tr. 668. Dr. Aledo also treated plaintiff in 2010 when she presented at the ER complaining of pain after slipping and falling. Tr. 660. He did not find any bruising and imaging was negative; he reported further that the pain affect seemed out of proportion to his

7 - OPINION & ORDER

examination. Id. In 2010, another physician, Dr. Stuart Currie, M.D., observed that that Ms. Sanders was "not tender in the lumbar area when distracted" despite presenting at an ER complaining of severe back pain. Tr. 633-34. Dr. Currie again treated Ms. Sanders two months later, when she presented in the ER complaining of a kidney stone; however, he noted that she was quietly waiting in the examination room until he entered, at which point she began to "jolt and grimace." Tr. 613. Finally, Dr. Currie observed that he was able to redirect Ms. Sanders with conversation, which vitiated the pain behavior. Id.

The ALJ also noted evidence in the record suggesting that Ms. Sanders exaggerated her mental health symptoms. Tr. 32. In 2011, Molly McKenna, Ph.D., examined Ms. Sanders and also reviewed the Learning Disability Evaluation she completed in 2009. Tr. 460. Dr. McKenna assessed that Ms. Sanders had poor effort and motivation, such that her actual cognitive abilities could not be properly estimated. Tr. 464. When asked by Dr. McKenna to gauge her pain level on a one to ten scale, Ms. Sanders reported that her peak pain was forty out of ten. Tr. 463. As the ALJ reported, Dr. McKenna found that Ms. Sanders endorsed an "excessive number of infrequent responses," which was uncommon, even in individuals with "genuine, severe psychological difficulties who report credible symptoms." Tr. 467.

Ms. Sanders submits that these incidents do not suggest exaggeration of symptoms. For example, Ms. Sanders maintains that her distractibility from pain, as noted by Dr. Currie, did not establish exaggeration. She also argues that Drs. Currie and Aledo did not see her often enough to establish a personal relationship or knowledge of her, and that the allegedly exaggerated symptoms are the result of legitimate underlying ailments. See Pl.'s Reply Br. at 7-8. Ms. Sanders further asserts that the ALJ acknowledged her mental impairments but then "used symptoms of those conditions as a basis for finding her not credible." Pl.'s Opening Br. at 20. Finally, Ms. Sanders contends that the Commissioner is engaging in an "electronic snow job,"

8 - OPINION & ORDER

which apparently consists of a "bombardment of citations . . . designed to deceive, overwhelm, or persuade with insincere talk." Id. at 6.

The standard of review for this Court is merely whether the ALJ used proper legal standards and based his opinion on substantial evidence in the record. Bray, 554 F.3d at 222. Here, the ALJ found evidence in the record that Ms. Sanders exaggerated symptoms to physicians on visits to the ER. Tr. 32. The ALJ also found evidence that she showed poor effort and motivation which resulted in inaccurately low results on mental assessments. Id. Thus, the ALJ's decision was reasonable and based on substantial medical evidence found in the record. Further, it is not clear to the Court why the Commissioner's inclusion of a multitude of citations which support the ALJ's finding that Ms. Sanders exaggerated her symptoms should be disregarded as merely a "snow job."

In any event, the ALJ discussed additional evidence in the record which impugned Ms. Sanders' credibility: her drug-seeking behavior, her ADL's, her past work experiences which were inconsistent with her alleged level of impairment, and her lack of candor about current alcohol use. Tr. 32-33. While Ms. Sanders denies these findings, they are all represented in the record. For instance, while Ms. Sanders alleges near complete disability, she has been able to care for her two children as a single parent, which conflicts with her alleged impairment level. Tr. 33, 461, 464, 486. Additionally, while Ms. Sanders reported having trouble maintaining her hygiene, the ALJ cited to evidence revealing that most treatment notes reflect appropriate grooming. See, e.g., Tr. 253, 292-93, 486-87, 568, 571, 578. The ALJ also found that Ms. Sanders did not leave her jobs for reasons related to her alleged impairments. Tr. 32, 46, 49, 50. Finally, the ALJ found that Ms. Sanders was less than candid about her alcohol use. Tr. 32. While she stated she had not consumed alcohol in years, she was arrested and convicted of DUI

in 2009, and reported that her friends expressed concern in 2010 regarding her then recent drinking. Tr. 82, 486.

Thus, the ALJ provided clear and convincing reasons, supported by a broad range of substantial evidence in the record. Even if the evidence could be reasonably interpreted in more than one way, it is beyond the authority of the Court to overturn the ALJ's conclusions on Ms. Sanders' credibility insofar as substantial evidence in the record supports them. Burch, 400 F.3d at 679.

## III. Lay Witness Testimony

Ms. Sanders argues that the ALJ erred by failing to give appropriate weight to the lay testimony submitted by her mother, Cindy Collett, and her stepfather, Derek Collett. If an ALJ chooses to discount the testimony of lay witnesses, he must give reasons which are germane to each witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. § 416.913(d)(4). Such testimony cannot be disregarded without comment. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citation omitted).

The ALJ gave some weight to the opinion of Ms. Collett: "[h]er statements are considered credible to the extent that she has accurately reported what she has seen, what has been exhibited to her, and what she has been told [by Ms. Sanders]." Tr. 30. The ALJ, however, did not adopt Ms. Collett's opinion that Ms. Sanders was unable to work, as he found that her opinion was "based on the [Ms. Sanders'] incredible behavior and self-reports." Id. Ms. Sanders argues that the ALJ's rationale for discrediting Ms. Collett's opinion was premised on an incorrect interpretation of Dr. McKenna's psychological evaluation. Pl.'s Opening Br. at 22. However, the ALJ's interpretation of Dr. McKenna's opinion is only tangential to the lay witness issue. The ALJ was required to state specific reasons germane to Ms. Collett to partially reject her testimony, and he did so here. Tr. 30.

10 - OPINION & ORDER

Ms. Sanders also argues that the ALJ failed to address the written statement of Mr. Collett. Mr. Collett's statement was drafted after the ALJ issued his decision. Additional evidence submitted to the Appeals Council, however, is considered part of the administrative record and must be considered upon review of the Commissioner's decision. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). However, the additional evidence must provide a basis for changing the hearing decision in order to necessitate a reversal or remand. Id. at 1162. Here, Mr. Collett's testimony, like Ms. Collett's, mirrors to a large extent plaintiff's self-reporting. Tr. 697. Mr. Collett's testimony also reasonably supports the ALJ's conclusion that plaintiff exaggerates her symptoms and is generally an unreliable self-reporter. Id. For example, he noted that Ms. Sanders "never has a cold; she always has pneumonia . . . [s]he never has a stomach ache; she always has some major intestinal disorder." Id. Thus, Mr. Collett's opinion does not provide a new basis for overturning the ALJ's decision. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) Plaintiff's argument is unavailing.

## IV. Medical Evidence

### A. Treating Providers Gellert and Thompson

Plaintiff asserts that the ALJ erred in failing to give any weight to the opinions of treating medical providers Leslie Gellert, MSW, and Natalie Thompson, a psychiatric nurse practitioner. Both Ms. Gellert and Ms. Thompson submitted letters to plaintiff in August 2011, in which they each concluded that plaintiff was completely disabled from maintaining full-time work. Tr. 596-97, 692-93. The ALJ provided three rationales for rejecting the opinions of Ms. Gellert and Ms. Thompson: (1) they were not accepted medical sources, (2) their disability opinions were

inconsistent with treatment notes; and (3) their submissions amounted merely to "advocacy documents" solicited by Ms. Sanders' attorney. Tr. 32.[1]

The Social Security Administration lists several factors by which an ALJ can evaluate the opinions of medical sources, including the longitudinal treating history of the physician, its consistency with other evidence, whether the record as a whole supports the opinion, whether the opinion is thoroughly explained, and if the source is an "acceptable medical source." SSR 06-03p, available at 2006 WL 2329939 at *3. However, the ALJ is not compelled to give weight to the opinions of non-acceptable medical sources. Id. The ALJ may reject testimony from "other sources" by giving reasons germane to each witness for doing so. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ provided several germane reasons for disregarding the testimony of Ms. Gellert and Ms. Thompson aside from the fact that they are not acceptable sources under the Act. Foremost, the ALJ found that their conclusions were inconsistent with Ms. Sanders' treatment record at LifeWorks, NW (where Ms. Gellert and Ms. Thompson were employed), including their own treatment records. Tr. 32. For example, while Ms. Gellert's post-hearing letter endorsed marked limitations in all aspects of her functioning, her assessed Global Assessment of Functioning ("GAF") score of 51 reflects moderate symptoms. Tr. 515-16, 597. Similarly, although Ms. Thompson's post-hearing letter describes poor hygiene, her treatment notes regularly indicated that Ms. Sanders was well-groomed and appropriately dressed. Tr. 692, 292-93, 486-87, 501, 504, 509, 553, 557, 563, 568, 571, 578, 586, 589. Further, while Ms. Thompson's notes consistently reflect no suicidal ideation, her post-hearing letter reported that Ms. Sanders was "chronically suicidal." Id. Plaintiff argues that "the idea that a detailed, written

---

[1]  The Commissioner does not refute that Ms. Thompson and Ms. Gellert were Ms. Sanders' primary medical care providers from 2007 until the time of the hearing. Def.'s Resp. at 19.

opinion from a treating source is not entitled to weight because it is not supported by underlying chart notes, is archaic, irrelevant, and improper." Pl.'s Opening Br. at 25. However, the degree to which a source supports her opinion with clinical findings is a factor the ALJ should consider. 20 C.F.R. § 416.927(c)(3); see also, Tommassetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir 2008). The ALJ's findings that the opinions of Ms. Gellert and Ms. Thompson were inconsistent with their own treatment notes and other treatment notes of record is certainly germane to those witnesses; the ALJ's decision to discredit them was not, therefore, legal error. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9the Cir. 2010). The Court must defer to the ALJ's reasonable interpretation of the evidence. Molina, 674 F.3d at 1111 ("[e]ven when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

**B. Dr. McKenna**

Ms. Sanders argues that despite purporting to give Dr. McKenna's opinion great weight, the ALJ failed to incorporate all of her observations into the decision. Plaintiff also contends that the ALJ failed to address Dr. McKenna's "observation that plaintiff's chronic suicidal ideation, depression, irritability, difficulty in controlling anger, affective instability and chronic pain and subjective memory complaints were [her] largest impediments to returning to gainful employment." Pl.'s Opening Br. at 25. The Commissioner replies that although the ALJ did not adopt every one of Dr. McKenna's observations, he adequately incorporated her opinions in his evaluation of the evidence. Def.'s Resp. Br. at 24. Dr. McKenna's opinion has already been discussed in some detail in the preceding sections regarding Ms. Sanders' provisional pain disorder diagnosis and her psychological testing results which suggested exaggeration of symptoms.

The ALJ is responsible for resolving conflicts and ambiguities in the record. <u>Magallenes</u>, 881 F.2d at 750. While Dr. McKenna did opine that Ms. Sanders would be a poor candidate for jobs requiring a great deal of interpersonal contact, she did not suggest that she was precluded from working because of her impairments. Tr. 32, 469-70, 728. Rather, she concluded in her January 2011 opinion that Ms. Sanders would "work best in independent positions that limit social contact." Tr. 470. That modification was incorporated in the ALJ's RFC: "[s]he should not be required to engage in public contact . . . [s]he can engage in brief, routine social interaction with others, but would work best alone, not as part of a team, to complete her assignment in a workplace." Tr. 24. In adopting Dr. McKenna's opinion on this point, the ALJ rejected state agency physician opinions to the contrary. Tr. 30-31.

Dr. McKenna's second opinion, submitted after the hearing, did not explicitly contradict her first, but did state that the "symptoms, behaviors, and attitudes I observed . . . would interfere with Ms. Sanders' ability to be successful in the workplace, particularly due to unpredictable mood shifts, poor response to situational changes, difficulty with many types of interpersonal interactions, physical complaints, and poor persistence." Tr. 728. However, the observation that plaintiff's impairments would interfere with her ability to perform in the workplace is neither inconsistent with her initial opinion nor with the limited RFC that the ALJ formulated. Considering all of the evidence in the record, the additional evidence provided by Dr. McKenna does not warrant reversal of the decision. See <u>Brewes</u>, 682 F.3d at 1162-63.

## V. RFC & VE Testimony

Ms. Sanders argues that the ALJ failed to include all of her impairments in formulating the RFC, both severe and non-severe, associated with her provisional pain disorder, including absenteeism, tardiness, and increased break frequency. Pl.'s Opening Brief, p. 26. Dr. McKenna noted that impediments to Ms. Sanders returning to the workforce included, among other things,

14 - OPINION & ORDER

irritability, mood swings, chronic pain, subjective memory complaints, and that her "activity level is quite limited . . . she has modified most of her activities due to physical complaints", yet Dr. McKenna did not find Ms. Sanders completely disabled from work. Tr. 469. Ms. Sanders also reiterates the argument that the ALJ failed to consider her difficulties in working with others, but as already explained above, the ALJ did consider that evidence and limited Ms. Sanders' work to jobs that allowed for minimal interpersonal interactions. Tr. 23-24.

Ms. Sanders further argues that SSR 85-15 and the Social Security Program Operations Manual ("POMS") dictate of finding of disability. The POMS, however, "does not impose any judicially enforceable duties on the SSA." Carillo-Years v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011). SSR 85-15 states that non-exertional impairments such as mental impairment may significantly erode the occupational base even if the impairments are not of listing severity in the Medical Vocational Guidelines. SSR 85-15, available at 1985 WL 56857 at *3-4. Ms. Sanders argues that her impairments are so substantial as to preclude her from performing the "basic mental demands of competitive, remunerative, unskilled work," such as understanding, carrying out, and remembering simple instructions, responding to supervision and coworkers appropriately, and dealing with changes in a routine work setting. Id. at *4; Pl.'s Opening Br. at 28. However, the impairments that Ms. Sanders' alleges are not supported by substantial evidence in the record, as the ALJ disregarded the opinions of Ms. Gellert and Ms. Thompson. Tr. 32. Furthermore, the ALJ found that Ms. Sanders did not end her previous jobs as a result of her alleged impairments, which infers that her ability level was higher than alleged. Tr. 33. Moreover, the ALJ crafted an RFC that considered her challenges in dealing with others in the workplace. Tr. 31. Thus, invoking SSR 85-15 is unavailing.[2]

---

[2]  Moreover, the ALJ's conclusion that Ms. Sanders could perform other work was based on the VE testimony, not the Medical-Vocational Guidelines, which SSR 85-15 contemplates. Tr. 34; see Lockwood v. Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010).

Finally, Ms. Sanders submits that the Commissioner failed to carry the burden of proof of identifying a significant number of jobs that plaintiff could perform. There is not a bright-line rule for what constitutes a significant number of jobs. See <u>Beltran v. Astrue</u>, 700 F.3d 386, 389 (9th Cir. 2012). The Commissioner can carry the burden at step 5 by identifying either a significant number jobs in the local or national economy. <u>Id.</u> The VE testified that based on Ms. Sanders' RFC, age, education, and work experience, she could perform occupations such as final assembler optical goods, pre-assembler printed circuit board electronic components, or assembler production, all of which belong to the same occupational cluster and represent 239,550 jobs nationally and 7,070 jobs statewide. Tr. 92-93. Additionally, the VE testified that plaintiff could perform the job of slip sorter, which represents 2,815,240 jobs nationally and 2,510 locally. Tr. 92-95. Further, the VE testified that there were 39,100 slip sorter cluster jobs in the national economy which plaintiff had the ability to perform. Tr. 89, 96-97. Thus, the Commissioner showed that plaintiff could perform work which exists in the national economy.[3] Tr. 34; 42 U.S.C. § 423(d)(2)(A).

---

[3] Ms. Sanders contends that because "there would be 4.45 jobs each in the region for the optical assembler, circuit board assembler electric components and or the assembler production jobs," the ALJ erred by finding substantial number of jobs in the region. Pl.'s Opening Br. At 28. Upon questioning by the ALJ, the VE explained that there were in fact 7,070 jobs within the occupational cluster for the state, including 1,587 different occupational titles. Tr. 92-93, 95-96. Dividing the number of jobs in the cluster by the number of occupational titles results in an average of 4.45 jobs per occupational title; however, that number does not simply represent the number of available jobs, as Ms. Sanders appears to contend. Pl.'s Opening Br. at 28. The Commissioner's burden of proof is to show that work exists in the national economy, not whether work exists in the immediate area or if a specific job vacancy exists. 20 C.F.R. § 416.966(a). The Commissioner carried the burden by identifying 7,070 jobs in the occupational cluster for optical assembler, circuit board assembler, and assembler production jobs; and 2,510 sales slip sorter jobs. Tr. 34.

**CONCLUSION**

The Commissioner's decision is AFFIRMED because it was supported by substantial evidence in the record and based on the correct legal standards. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ⟋⟍ day of September, 2013.

Marco A. Hernandez
United States District Judge